# UNITED STATES DISTRICT COURT
# FOR EASTERN DISTRICT OF TENNESSEE

ELSHELL DARVY BERTUS )
)
    *Plaintiff,* )
)
v. )    Case No:_____
)    JURY DEMAND
HAMILTON COUNTY, TENNESSEE, )
HAMILTON COUNTY SHERIFF AUSTIN )
GARRETT, HAMILTON COUNTY )
SHERIFF'S OFFICE JOHN DOES, )
HAMILTON COUNTY SHERIFF'S OFFICE )
JANE DOES, QCHC, DR. JOHNNY BATES, )
QCHC JOHN DOES, and QCHC JANE )
DOES )
)
    *Defendants.* )

## COMPLAINT

## I. PRELIMINARY STATEMENT

1.    This is a civil rights action under the Eighth and Fourteenth

Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

Plaintiff, Elshell Darvy Bertus ("Elshell"), brings this action to obtain compensatory

damages, punitive damages, attorney's fees, costs, and other equitable relief.

## II. JURISDICTION

2.    This action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction

1

is founded on 28 U.S.C. §§ 1331 and 1343 (a)(3)(4), as well as the Eighth and Fourteenth Amendments to the United States Constitution.

3.     This Court has supplemental jurisdiction to adjudicate state law claims, if any, which arise from the same facts and circumstances pursuant to 28 U.S.C. § 1367(a).

### III. VENUE

4.     Venue is proper in the Eastern District of Tennessee pursuant to 28 U.S.C.§ 1391(b)(2) because acts occurred at the Hamilton County Jail and Detention Center located at 601 Justice Way, Chattanooga, TN 37421 which is within Hamilton County, Tennessee, and the Eastern District of Tennessee.

### IV. PARTIES

### PLAINTIFF

5.     Plaintiff, Elshell Darvey Bertus ("Elshell"), is a citizen of the State of Maryland and the United States of America. At the time of the incidences giving rise to this suit, Elshell was an inmate at the Hamilton County Jail and Detention Center ("Jail").  On May 23, 2025, officers with the Chattanooga Police Department ("CPD") arrested Bertus on charges of theft of property, resisting halt frisk stop, and evading arrest. During his arrest, Elshell was taken to the ground, subdued, and detained by officers with CPD. Elshell suffered leg injuries consistent

2

with open cuts, open scrapes, and open abrasions. Elshell was presented to the Jail with these injuries and he remained housed at the Jail for approximately thirty (30) days. Elshell's injuries never received proper medical care and treatment. Upon information and belief, Elshell developed infections due to the open wounds. These infections went untreated and developed into more acute medical issues that required extended hospital stay. Despite filing complaints and grievances with the Jail, neither employees of Hamilton County ("Hamilton") nor QCHC ("QCHC") took Elshell's complaints with any respect or seriousness. His mild infections developed into sepsis and if had gone untreated any longer Elshell would most likely have died. The injuries suffered by Elshell due to the deliberate indifference of the Defendants will likely remain with him for the rest of his life. Within the last thirty days of filing this complaint, the infection appeared again, requiring Elshell to receive medical treatment and overnight stays at a hospital.

## **DEFENDANTS**

6. Defendant Hamilton County ("County") is a political subdivision created by the Tennessee General Assembly in 1819. It owns the Hamilton County Jail and Detention Center ("Jail") and is responsible for its' funding and operations. The County is also responsible for ensuring adequate funding is allocated to the Hamilton County Sheriff's Office ("HCSO") to keep its law

3

enforcement deputies and correctional officers properly trained and to ensure the Jail is compliant with federal and state law. The County is also responsible for ensuring adequate funding is allocated to Hamilton County Emergency Services ("EMS") to keep sufficient staff and equipment and to adequately train EMS staff to Immediately respond to medical emergencies. Under T.C.A. § 41-4-115, the County's legislative body alone has the power, and it is their duty, to provide medical care to all inmates and detainees confined in the Jail.

7.     Defendant Austin Garrett ("Garrett") is the elected sheriff of Hamilton County and is a resident of Tennessee. Garrett controls HCSO and the Jail. He is responsible for the hiring, training, and supervision of all employees under his command. As the final decision maker and policy maker, Garrett controls all Sheriff's Office employees and is responsible for all actions of his staff. Under T.C.A. § 41-4-101, Garrett has custody and charge of the Jail and of all prisoners committed to it and he may appoint a jailer, for whose acts the sheriff is civilly responsible. *Sowards v. Loudon County*, 203 F.3d 426, 436 (6th Cir. 2000). *See also United States v. Hill*, 60 F. 1005, 1009 (6th Cir. 1894) (... the Tennessee statute makes the sheriff civilly responsible for the acts of the jailer whom he appoints.) At all times relevant herein, Garrett was acting under color of state law and was responsible for Elshell's health, safety, and security. He is being sued in his

4

official and individual capacities.

8.     Hamilton County Sheriff's Office John and Jane Doe Defendants ("HCSO DOES") are employees of HCSO. Upon information and belief, HCSO Does were present and observed Elshell while he was held in the Jail. At all times relevant herein, these HCSO Does were acting under color of state law and were responsible for Elshell's health, safety, and security. Once Elshell determines the true identities of HCSO Does, Elshell will file appropriate motion(s) to substitute and/or request permission to amend this complaint. HCSO Does are being sued in their individual capacities.

9.     Defendant Quality Correctional Health Care of Tennessee, PLLC, ("QCHC") is a for-profit professional limited liability company organized and existing under the laws of the State of Tennessee. QCHC is contracted by the County to provide medical services to all Jail inmates. Under Tennessee Corrections Institute ("TCI") Minimum Standards Rule 1400-01-.13(2), QCHC is the Jail's designated health authority.

10.     Defendant Dr. Johnny E. Bates ("Dr. Bates") was, at all times relevant herein, acting under color of state law, the sole owner of QCHC, a for-profit professional limited liability company, organized and existing under the laws of the State of Tennessee and contracted by the County to provide medical services to all Jail inmates. He is being sued in his official and individual capacities.

11.     Defendants QCHC John Does ("QCHC Does") are employed by QCHC

as medical providers to the Jail. Upon information and belief, QCHC Does were present and observed Elshell while he was in HCSO custody. At all times relevant herein, they were acting under color of state law and were responsible for Elshell's health and safety. Once the true identities of QCHC Does are discovered, Elshell will file appropriate motion(s) to substitute and/or request permission to amend this complaint. QCHC Does are being sued in their individual capacities.

## IV. FACTUAL ALLEGATIONS

### Historical Facts regarding County, Garrett, QCHC, and Others

12.  Prior to August of 2023, the Jail was known as the Silverdale Detention Center. For nearly forty years, Silverdale was privately run by CoreCivic. In 2020, CoreCivic did not renew its contract with the County. In a letter to County Commissioners, CoreCivic accused the County of failing to address "significant safety and security issues," including "faulty locking controls, broken camera systems, and interior and exterior doors that do not function properly."

13.  Garrett assumed control of Silverdale beginning in October 2021 upon being sworn in as the Hamilton County Sheriff. The County Commission voted to change the name of the facility to the Hamilton County Jail in mid-2023.

14.  For years, the Jail has been well known for its violence, inhumane conditions, medical neglect, and failure to protect inmates. These issues continue unabated despite the County's takeover of the facility.

15.  In April 2021, inmate Christopher Bell was stabbed 17 times after jailers forced him and other new inmates into a cell where several inmates were

6

waiting to attack them as part of an initiation of new detainees. See Jamie

Satterfield, *Trio of suits against Hamilton County Sheriff allege violent attacks in jail,* TENNESSEE LOOKOUT, April 21, 2022, retrieved February 10, 2025, at:

https://tennesseelookout.com/2022/04/21/trio-of-suits-against-hamilton-county-sheriff-allege-violent-attacks-in-jail/

16.     Christopher Bell's mother claims her son was still bleeding and had not received medical care more than twelve hours after the attacks. See: Michelle Heron, *7 Inmates Charged in Silverdale Detention Center Stabbing, HCSO Says*, WRCB-TV, December 1, 2021 retrieved February 10, 2025, at:

https://www.local3news.com/localnews/whats-trending/update-7-inmates-charged-in-silverdale-detention-centerstabbings-hcso-says/article_641f7752-3fb7-5eeb-9187-3a2af3488bcc.html

17.     In September of 2021, the Jail failed an inspection by the Tennessee Corrections Institute. Among the deficiencies found were overcrowded conditions, broken security cameras, and poor sanitation/maintenance. See: Eric Price, *Inspection finds 'deficiencies' at Silverdale Detention Center in Hamilton County,* WTVC-TV, February 3, 2022, retrieved February 10, 2025, at:

https://newschannel9.com/news/local/inspection-finds-deficiencies-at-silverdale-detention-center-in-hamilton-county

18.     In October 2021, inmate Brad Gifford was booked into the Jail for public intoxication. Within a few hours, he claims another inmate attacked him. Gifford suffered a concussion, black eyes, and his lip was torn from his jaw, leaving

7

him with permanent facial nerve damage. Gifford says he repeatedly cried out for help but was ignored. See: LaShawn Pagan, *Amid continuing inmate assaults, Hamilton County Sheriff seeks funding for more Silverdale officers*, CHATTANOOGA TIMES FREE PRESS, updated May 11, 2022, retrieved February 10, 2025 at: https://www.timesfreepress.com/news/2022/may/10/allegations-violence-continue-silverdale/

19.     In April of 2022, while serving as the elected District Attorney General of Hamilton County, undersigned counsel asked the U.S. Department of Justice's Civil Rights Division to investigate conditions at the jail.  This request came at the behest of a group of Chattanooga clergy troubled by overwhelming instances of violence and the failure of the County to take action to ensure inmates were treated humanely, protected from harm, and received timely and adequate medical care.

20.     On April 5, 2022, Brandon Cornett was booked into the Jail. His wife claims she told Jail personnel on April 8, 2022, that Cornett was taking multiple medications to treat neuropathy. Mrs. Cornett says she was told the jail already had all her husband's medications. Two weeks later, Brandon Cornett was found unconscious in his cell with multiple oozing sores on his legs. He died the following day. Medical records show he was not seen by a doctor until the day prior to his death. LaShawn Pagan, *Two more lawsuits filed against Hamilton County involving Silverdale*, CHATTANOOGA TIMES FREE PRESS, March 24, 2023, retrieved on February 11, 2025, at: https://www.timesfreepress.com/news/2023/mar/24/two-more-lawsuits-filed-against-hamilton-county-silverdale-tfp/

21. In May of 2022, inmate Matthew Miller was booked in the Jail on an outstanding warrant. Miller claims that within ten minutes of being put in a housing cell, a group of inmates began beating him then dragged him into the showers where he was stabbed and raped. Miller suffered multiple cuts to the scalp and neck, stab wounds to the back, a broken nose, a torn knee, and a fractured femur. Despite the obvious injuries, Miller claims that once he was able to call for help the responding deputy showed no urgency in seeking medical treatment. Instead of immediately calling an ambulance, the deputy summoned a nurse who then called for an ambulance. (Id., ¶ 30)

22. On May 11, 2022, inmate Carol White was found dead in the Jail. White was five days into serving a 45-day sentence for drunk driving and was not provided her medications despite the court specifically instructing the Jail to do so in its sentencing order. See: LaShawn Pagan, *Chattanooga families claim deadly medical neglect at Silverdale Detention Center*, CHATTANOOGA TIMES FREE PRESS, last updated September 10, 2022, retrieved February 10, 2025 at: https://www.timesfreepress.com/news/2022/sep/10/families-claim-deadly-medical-neglect-tfp/

23. On May 16, 2022, inmate DaQuarrius Brown died at Erlanger Hospital. Brown required daily medications to treat HIV and asthma. Despite knowing about his condition, Jail personnel failed to provide Brown with any medication for more than two months. (Id., ¶ 34)

24. On June 12, 2022, inmate Donald Fitzgerald died in HCSO custody of

9

a bleeding ulcer. Two days earlier, Fitzgerald had begun complaining to Jail staff of constant abdominal pain. Instead of seeking medical care, Jail personnel assumed Fitzgerald was experiencing drug withdrawal. They gave him laxatives and pain medication and used the metal detector at the Jail's entrance to conduct a "body scan." See: LsShawn Pagan, *Lawsuit claims Silverdale jail staff assumed inmate was constipated addict, let him die of bleeding ulcer*, CHATTANOOGA TIMES FREE PRESS, June 7, 2023, retrieved February 10, 2025, at:

https://www.timesfreepress.com/news/2023/jun/07/lawsuit-silverdale-staff-assumed-inmate-tfp/

25.     On July 23, 2022, it took guards almost four hours to notice four inmates had escaped. See: *Four inmates captured after escaping from Silverdale Detention Center*, l CHATTANOOGA TIMES FREE PRESS, last updated, July 23, 2022, retrieved on February 10, 2025, at:

https://www.timesfreepress.com/news/2022/jul/23/four-inmates-escape/.

26.     On May 27, 2023, a brawl involving more than two dozen inmates erupted over a fentanyl dispute. One inmate was stabbed multiple times with a shank. Although thirty inmates were initially charged, all but one were let off the hook by prosecutors, who cited a lack of security video as the reason for dismissal. See: LaShawn Pagan, *No video evidence leads to dismissal of 30 assault cases at Silverdale*, CHATTANOOGA TIMES FREE PRESS, June 30, 2023, retrieved on February 11, 2025, at: https://www.timesfreepress.com/news/2023/jun/30/no-video-evidence-leads-to-dismissal-of-30-tfp/

27. On June 28, 2023, a riot broke out during a contraband search at the Jail. While Garrett downplayed the incident as just "unruly inmates," HCSO called in multiple law enforcement agencies to help restore order. See: *Update: 'Unruly inmates' at Silverdale prompt multiple agencies to respond*, WRCB-TV, updated July 4, 2023, retrieved on February 11, 2025, at: https://www.local3news.com/local-news/update-unruly-inmates-at-silverdale-prompt-multiple-agencies-to-respond/article_77307134-15d0-11ee-9535-1f6e862fb180.html

28. In July of 2023, an attorney representing inmate Jason Chen publicly alleged Jail staff subjected his client to conditions "that amount to torture." Chen went without water for two days, was moved to a cell covered in feces, faced freezing temperatures, and was denied toiletries. Attorney Josh Weiss said he had to repeatedly alert Jail staff to problems to have them resolved. See: LaShawn Pagan, *Chattanooga attorney claims Jason Chen facing torture-like conditions at Silverdale Detention Center*, CHATTANOOGA TIMES FREE PRESS, July 4, 2023, retrieved on February 11, 2025, at: https://www.timesfreepress.com/news/2023/jul/04/chattanooga-attorney-jason-chen-silverdale-jail-tfp/

29. On October 8, 2023, Jail staff transported Jebediah Srofe to Parkridge North Emergency Room following his arrest for driving under the influence and related charges. Upon hospital clearance he was returned to the Jail where he continued to experience symptoms of drug withdrawal. Srofe was found unconscious on a shower floor on October 14, 2023. He died around an hour later at a hospital. A

pending lawsuit filed by Srofe's parents allege their son died due to the Jail's failure to provide adequate medical care and deliberate indifference of the staff to ensure Srofe's safety and health. *Srofe v. Hamilton County, TN, et al.*, No. 1:24-cv-359 (E.D. Tenn. November 13, 2024), Complaint Docket No. 2.

30. On November 2, 2023, seven inmates had to be taken to emergency rooms due to suspected drug overdose. Two additional inmates were charged with possession of fentanyl for resale and possession of contraband. It is unknown how the suspects got the drugs into the Jail. See: *Two charged after seven Hamilton County inmates show signs of overdose*, CHATTANOOGA TIMES FREE PRESS, November 3, 2023, retrieved on February 11, 2025, at: https://www.timesfreepress.com/news/2023/nov/03/two-charged-after-seven-hamilton-county-inmates/

31. On March 14, 2024, inmate Deward Johnson died while waiting to be released from the Jail. An autopsy showed Johnson died of a drug overdose. He had meth, fentanyl, and amphetamines in his system. Other inmates had seen him vomiting but Jail staff did not provide him with medical care. See: Ellen Gerst, *Autopsy: Man's death before release at Hamilton County Jail likely caused by drugs*, CHATTANOOGA TIMES FREE PRESS, May 3, 2024, retrieved on February 11, 2025 at: https://www.timesfreepress.com/news/2024/may/03/autopsy-mans-death-before-release-at-hamilton/

32. Since Garrett assumed control of the Jail, the number of in-custody deaths is 2.2 times higher than the national average. University of Tennessee at

Knoxville Criminologist Michelle Brown said the numbers are "really very high" and "It should be shocking." In contrast, Garrett's spokesman, Matt Lea, claimed, "We have a very safe jail." Lea also claimed statistics compiled by the U.S. Department of Justice are not accurate, telling the media, "It's very complicated. I'm not a mathematician." See: Sofia Saric, *'It should be shocking': Hamilton County jail death rate far exceeds national figure,* CHATTANOOGA TIMES FREE PRESS. October 27, 2024, retrieved on February 11, 2025, at:

https://www.timesfreepress.com/news/2024/oct/27/it-should-be-shocking-hamilton-county-jail-death/

33. Garrett has found one way to manipulate those statistics. He has established a pattern and practice of seeking dismissal of cases against inmates who suffer life-threatening injuries or end up hospitalized due to medical neglect. He and his spokesman frequently claim such an inmate has been released from custody "due to the severity of the injuries." This absolves HCSO of the costs associated with hospital bills for critical medical care and the costs of around-the-clock bedside guards. If a "released" hospitalized inmate dies as a direct or proximate result of incarceration – either through violence or medical neglect – that death would not need to be reported to the U.S. Attorney General under the Death in Custody Reporting Act.

34. Defendants have taken no substantial steps to remedy unconstitutional conditions at the Jail, thereby depriving inmates of civil rights afforded under the U.S. Constitution.

35. Pervasive civil rights violations have prompted numerous lawsuits against the County, the Jail, Garrett, and former Sheriff Jim Hammond. Currently, Senior U.S. District Judge Curtis Collier is overseeing around a dozen cases involving violence, medical neglect, and/or other civil rights violations that occurred at the Jail.

36. Attorneys with the Chattanooga Office of Federal Defender Services of East Tennessee routinely, as a matter of pattern and practice, request their clients not be held at the Hamilton County Jail.

37. Tennessee Code Annotated § 8-8-201(a)(3) outlines the duties of a sheriff to include " Take charge and custody of the jail of the sheriff's county, and of the prisoners therein; receive those lawfully committed, and keep them personally, or by deputies or jailer, until discharged by law; be constantly at the jail, or have someone there, with the keys to liberate the prisoners in case of fire."

38. According to the Hamilton County Tennessee Sheriff's Office website, "As Sheriff, he is responsible for the administration and operations of the Hamilton County Sheriff's Office, which employs 540 personnel and operates under a $68 million budget. Serving the 4th most populated county in the state, the HCSO provides law enforcement and corrections services across a 576-square mile jurisdiction, protecting over 369,000 residents."

39. Garrett is running in the August 2026 State and Federal Primary and County Elections to be re-elected as Hamilton County Sheriff. In an effort to

14

energize and beguile voters, Garett has been running social media ads touting himself as the 24/7 Sheriff.

40. Garrett operates HCSO according to state law and HCSO policy. In order to operate an agency with over 540 employees, Garrett has organized his department under a typical organizational structure to chiefs, captains, lieutenants, sergeants, patrol officers, corrections officers, and public information officers. Upon information and belief, the structure allows Garrett constant 24/7 communication regarding the conditions of the jail and its inmates. This communication requirement remains constant across the Jail for all shifts and employees of the Defendants.

41. Alone, the County cannot meet the medical needs of all inmates. The County contracted with QCHC to provide all medical needs and care of the inmates in the Hamilton County Jail and Detention Center. QCHC must staff all shifts on a 24/7 daily basis, 365 days a years. Upon information and belief, QCHC has not only an organizational structure of its employees but also mechanisms to communicate regarding inmate health on a 24/7 daily basis 365 days a year. State law and regulations outline these responsibilities as:

"The provision of medical services for the facility shall be the responsibility of a designated health authority such as a hospital, clinic, or physician. There shall be an agreement between the government funding agency responsible for the facility and the hospital/clinic/physician responsible for such services. The designated health authority must be notified in instances where an inmate may be in need of

medical treatment and the facility shall document this notification. The health authority shall meet with the Sheriff and/or facility administrator at least annually." *Tennessee Rules and Regulations,* 1400-01-.13.

42.     Ostensibly, the contracting parties, (County, Garrett, and QCHC), must maintain opens lines of communication between each other about the health status of inmates on a 24/7 daily basis. As the County keeps the jail open 365 days a year, these lines of communication must remain constant. At any point in time, the County and/or Garrett can contact their own agents but also QCHC or their agents to get health status updates on inmates. In turn, QCHC can contact the County, Garrett, and/or their agents on a 24/7 daily basis and update them on the health status of any inmate.

43.     The contractual relationship between County and QCHC focuses on providing and meeting all medical needs of inmates. Under Tennessee law, the Tennessee Corrections Institute dictates certain standards and behavior required of the County, Garrett, QCHC, and Bates in operating a jail.  "Local correctional facilities are the first step in handling of the arrested offender and in it he receives his first impression of the correctional process. His experience in a county jail or a municipal lock-up facility will be a potent force molding his attitude toward law enforcement officials, the correctional system and the community itself." *Tennessee Rules and Regulations* 1400-01-.01(2)

44.     Upon arrest the following medical services to inmates to include "Receiving and screening shall be performed on all inmates upon admission to the

facility and before placement in the general housing area. The findings shall be recorded on a printed screening form. The officer performing this duty shall check for:

(a)    A serious illness;

(b)    A comatose state;

(c)    Obvious wounds;

(d)    Prescribed medications; and

(e)    Suicide risk assessment, including suicidal ideation or history of

Suicidal behavior or other mental health illness." *Tennessee Rules and Regulations,* 1400-01-.13(a)

45.    "A more complete examination shall be completed on inmates within fourteen (14) days of the inmate's initial commitment date. If the facility can document that a health appraisal was conducted within the previous ninety (90) days, this fourteen (14) day physical is not required unless medical conditions dictate otherwise. This examination shall be performed by a physician or a person who has been designated by a physician as capable of performing such examination. If a designee performs the examination, he/she must do so under supervision of a physician and with a protocol or set of instructions and guidelines from the physician. This examination shall include:

(a)    Inquiry into current illness and health problems, including those specific to women;

(b)    Inquiry into medications taken and special health requirements;

(c)     Screening of other health problems designated by the responsible Physician;

(d)     Behavioral observation, including state of consciousness and mental status;

(e)     Notification of body deformities, trauma markings, bruises, lesions, Jaundice, ease of movement, etc.

(f)     Condition of skin and body orifices, including rashes and infestations;

(g)     Disposition/referral of inmates to qualified medical personnel on an Emergency basis;

(h)     A review of the initial intake receiving screening; and

(i)     An individual treatment plan as appropriate." *Tennessee Rules and Regulations* 1400-01-.13 (9).

46.     Upon information and belief, the County and Garrett have adopted a grievance process for inmates to report health issues to the County, Garrett, and QCHC. The grievance process must be completed thru writing the grievance or typing and sending a grievance via the kiosks provide by the County and Garrett for inmate use. The grievance process allows the County, Garrett, and QCHC to be notified of inmate health and constitutional rights issues. The grievance process is managed electronically by County, Garrett, and QCHC on a 24/7 basis, 365 days a year.

**Facts Specific to Elshell Bertus**

47. On or about May 25, 2025, officers with the Chattanooga Police Department ("CPD") arrested Elshell for criminal charges to include Theft of Property, Resisting Arrest, and Possession of Drug Paraphernalia.

48. During his arrest, Elshell suffered injuries about his leg(s) to include open abrasions and cuts which required medical attention.

49. Upon his arrest, Elshell was taken and placed into custody at the Hamilton County Jail and Detention Center. He was continuously housed at the Jail until June 16, 2025. One of the defendants and/or their agents gave Elshell a basic gauze bandage to care for the cuts and abrasions. The cuts and abrasions were open and obviously required more than a gauze bandage.

50. Elshell did not receive any proper medical attention and treatment for his cuts and abrasions while in custody at the jail.

51. Due to the defendant's lack of medical attention and treatment, Elshell developed an infection in his body thru the open cuts and abrasions. Initially, he was unaware he had been inflicted with an infection.

52. Elshell notified the Defendants and their agents of his medical issues using the kiosk system as well as sending written notes to the County and its agents of his pressing need for immediate medical treatment. Elshell also orally advised the County and its agents of his need for immediate medical attention.

53. Elshell's infection continued growing, to include oozing puss from his wounds, oozing blood from his wounds, body fever, body chills, and other related medical issues. His condition continually declined while in custody.

19

54. Other inmates observed the open wounds with puss and blood. These inmates would beat Elshell about his body and head in efforts to send him to the medical units, to no avail.

55. Despite the open wounds and peeling skin, Elshell did not receive proper medical attention and treatment. He became violently ill and was bed bound between 18-24 hours a day while at the Jail.

56. Elshell resolved a number of his criminal charges on June 9, 2025, in Hamilton County General Sessions Court. One charge remained unresolved but he should have been released from the Jail.

57. For unknown reasons, Elshell remained in custody at the Jail for another seven days.

58. During this seven-day period, Elshell again notified the Defendants orally and in writing of his need for immediate medical attention. As with his previous grievances, these grievances were ignored by the Defendants and their agents.

59. Upon release from the Jail on June 16, 2026. Elshell immediately sought medical care and was immediately hospitalized for three days due to the infection he developed while at the Jail.

60. Doctors advised Elshell if he had remained in custody another day that he most likely would have died from sepsis, which developed due to the lack of any medical treatment and care while in custody.

61. A year later, Elshell is still dealing with ongoing issues related to the infection. Last month he was once again hospitalized when the infection returned,

62. It is likely Elshell will spend the rest of his life dealing with the consequences of an infection that could have been quickly and permanently resolved if the Defendants had evaluated Elshell's condition and then acted with necessary and appropriate urgency.

## COUNT I
## 42 U.S.C. § 1983 DELIBERATE INDIFFERNCE TO ELSHELL BERTUS' MEDICAL NEEDS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
## (AGAINST ALL DEFENDANTS)

63. Plaintiff re-alleges and incorporates by reference all proceeding paragraphs as if fully set forth herein.

64. The County, Garrett, QCHC, Dr. Bates, HCSO Does, and QCHC Does had all either personally interacted with Elshell and observed his deteriorating medical condition or knew or should have known of his deteriorating medical condition. Upon information and belief, they were aware or should have been aware that Elshell suffered from an objectively serious medical emergency. The Defendants' actions or lack of action were either intentional in ignoring this life-threatening situation, or reckless in that they failed to act appropriately and reasonably to mitigate the risks of an objectively serious medical emergency. As

such, these Defendants were deliberately indifferent to Elshell's serious and urgent medical needs.

65. Alternatively, Defendants recognized Elshell had an objectively serious and urgent medical need and knew or should have known from the facts available to them that Elshell was experiencing a life-threatening medical emergency but disregarded the substantial risk posed by failing to take reasonable actions. As such, Defendants were deliberately indifferent to Elshell's serious medical emergency.

66. The County, Garrett, QCHC, Dr. Bates, HCSO Does, and QCHC Does had long been aware that Jail conditions were, and continue to be, well below a constitutional level.  Elshell's experience was not an isolated incident. The Defendants knew or should have known the Jail fails to provide appropriate care in instances of objectively serious medical needs such as to cause preventable permanent injuries and/or deaths. By failing to take substantial steps to remedy these failings, Defendants have shown they were deliberately indifferent to Elshell's objectively serious and urgent medical needs.

67. The average person, after simply reading the plethora of media reports detailing overdose after overdose and story after story of medical neglect would know the Jail failed to provide an environment that protected Elshell's constitutional rights. That these Defendants have done little to remedy such blatant constitutional violations would shock the conscious of any reasonable person.

68. The actions and/or inaction of all Defendants solely and/or in

combination violated Elshell's rights under the Fourteenth (and/or alternatively the Eighth) Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, in that they demonstrate the Defendants were deliberately indifferent to Elshell's serious medical needs.

69. Consequently, Plaintiff is entitled to all permissible damages, including punitive damages substantial enough to deter future Eighth and Fourteenth Amendment violations.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays for relief as follows:

A. That proper process issue and be served upon Defendants;

B. That Defendants be required to appear and answer this Complaint within the time required by law;

C. That a jury be empaneled to try this case on all issues so triable;

D. That Plaintiff be awarded compensatory damages plus interest, including pre-judgment interest, in an amount to be determined at trial;

E. That Plaintiff be awarded punitive damages plus interest, including pre-judgment interest, in an amount great enough to deter Defendants from future constitutional rights violations;

F. That Plaintiff be awarded all costs and discretionary costs of trying this action;

G. That Plaintiff be awarded reasonable attorney fees pursuant to 42 U.S.C. § 1988;

H. That this Honorable Court declare Defendants acted illegally by failing to assure constitutionally required levels of inmate medical care;

I. That under 18 U.S.C. § 3626, the Court appoint a Special Master to conduct hearings, and propose findings on the record, and if the Court deems necessary, to assist in the development of remedial plans to bring the Jail in line with constitutional requirements;

J. That such other and further relief be granted as this Honorable Court deems equitable, proper, and just.

Dated this the 15th day of June 2026.

/s/ Neal Pinkston

Neal Pinkston, BPR 021245
Pinkston Law, PLLC
1216 East Main Street
Suite 206
Chattanooga, TN 37408
Office Number: (423) 654-8326
neal@nealpinkstonlaw.com
*Counsel for Plaintiff*

24